## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

DAVID KING                                        )
6214 John Wayne Drive                             )
Fredericksburg, Virginia 22407;                   )
                                                  )
DOUGLAS HURST                                     )
4839 Kempsville Greens Parkway                    )
Virginia Beach, Virginia 23462;                   )
                                                  )        Civ. No. 3:13- CV 630
BRENDA LEVY                                       )
2724 Mohawk Drive                                 )
Richmond, Virginia 23235;                         )
                                                  )
ROSE LUCK                                         )
2209 County Drive                                 )
Petersburg, Virginia 23803                        )
                                                  )
            *Plaintiffs,*                         )
v.                                                )
                                                  )
KATHLEEN SEBELIUS, in her official                )
capacity as U.S. Secretary of Health and          )
Human Services; and the                           )
UNITED STATES DEPARTMENT OF                       )
HEALTH AND HUMAN SERVICES                         )
200 Independence Avenue SW                        )
Washington, District of Columbia 20201;           )
                                                  )
JACOB LEW, in his official capacity as U.S.       )
Secretary of the Treasury; and the                )
UNITED STATES DEPARTMENT OF THE                   )
TREASURY                                          )
1500 Pennsylvania Avenue NW                       )
Washington, District of Columbia 20220; and       )
                                                  )
DANIEL WERFEL, in his official capacity as        )
Acting Commissioner of Internal Revenue;          )
and the                                           )
INTERNAL REVENUE SERVICE                          )
1111 Constitution Avenue NW                       )
Washington, District of Columbia 20004,           )
                                                  )
            *Defendants.*                         )

## COMPLAINT

1.      One of the pillars of the Patient Protection and Affordable Care Act ("ACA" or "the Act") is its creation of new health insurance "Exchanges"—state-level clearinghouses for standardized insurance products, where insurers will be regulated and individuals can satisfy the individual mandate, the new statutory obligation to purchase comprehensive insurance policies.

2.      To encourage states to establish Exchanges, Congress used carrots, such as start-up grants to help fund the creation of Exchanges; and sticks, such as prohibiting states from tightening Medicaid eligibility standards before setting up Exchanges. The biggest carrot was the offer of premium assistance subsidies from the Federal Treasury—refundable tax credits to help a state's low- and moderate-income residents buy insurance—if that state set up its own Exchange. States rejecting the offer got a stick instead: the imposition of a federally established, federally operated Exchange in the state, with no subsidies at all.

3.      As it turns out, a majority of states have declined to establish Exchanges. That choice has left the federal government with the additional burden of establishing Exchanges in those states, but without the burden of paying for premium assistance subsidies to the residents of those states—just the balance that Congress struck.

4.      Notwithstanding express statutory language limiting premium assistance subsidies to Exchanges established by states, the Internal Revenue Service ("IRS") has promulgated a regulation ("the IRS Rule") purporting to authorize subsidies even in states with only federally established Exchanges, thereby disbursing monies from the Federal Treasury in excess of the authority granted by the Act. The IRS Rule squarely contravenes the express text of the ACA, ignoring the clear limitations that Congress imposed on the availability of the federal subsidies. And the IRS promulgated the regulation without any reasoned effort to reconcile it with the contrary provisions of the statute.

1

5.      While most subsidies benefit recipients, the ACA's subsidies actually serve to financially injure and restrict the economic choices of certain individuals. In particular, many individuals would, but for their eligibility for federal subsidies, be entitled to a "certificate of exemption" from the Act's individual mandate penalty, which is available to low- or moderate-income individuals for whom insurance is unaffordable. For these people, the IRS Rule, by reducing to some extent the out-of-pocket cost of health coverage, effectively subjects them to the individual mandate's requirement to purchase costly, comprehensive health insurance that they otherwise would forgo; further, it prevents them from purchasing cheaper, high-deductible catastrophic coverage that under the ACA may only be sold to individuals who are under age 30 or who have a certificate of exemption from the individual mandate penalty.

6.      The IRS Rule's unauthorized subsidies would, in this way, trigger the individual mandate penalty against Plaintiffs, residents of Virginia, which has opted not to establish its own Exchange. The Rule disqualifies them from their eligibility for certificates of exemption, thereby forcing them either to pay a penalty or to buy comprehensive, costly coverage that they do not want; it also prevents them from buying cheaper, catastrophic coverage using their own funds.

7.      Accordingly, Plaintiffs seek a declaratory judgment that the IRS Rule is illegal under the Administrative Procedure Act, and injunctive relief barring its enforcement.

## I.      JURISDICTION AND VENUE

8.      Because this action arises under the federal Administrative Procedure Act ("APA"), 5 U.S.C. § 706, this Court has federal question jurisdiction under 28 U.S.C. § 1331.

9.      Venue is proper in this Court under 28 U.S.C. § 1391(e)(l)(C), because the defendants are officers and agencies of the United States and Plaintiffs reside in this District.

10.     Venue is proper in this Division under this Court's Local Rule 3(c), because Plaintiffs David King, Brenda Levy, and Rose Luck reside in this Division.

## II.    PARTIES

11.    Plaintiff David King is a resident of Virginia, which has opted not to establish its own insurance Exchange. He is married, his projected household income for 2014 is $39,000, and he will be 63 years old on January 1, 2014. King is not eligible for employer- or government-sponsored health coverage that satisfies the individual mandate. Absent the IRS Rule, King would be entitled to a certificate of exemption from the individual mandate penalty for 2014, because the cheapest bronze plan approved for sale to him on the federal Exchange in Virginia would cost more than 8% of his projected household income for 2014 (*i.e.*, more than $260 per month). But because the IRS Rule makes him eligible for a subsidy that would reduce his out-of-pocket cost to below that figure, he will be disqualified from that otherwise-applicable exemption and subject to the individual mandate penalty. As a result, King will be forced to either pay a penalty or purchase more insurance than he wants. He is therefore injured by the IRS Rule, because it has the effect of either subjecting him to monetary sanctions or requiring him to alter his behavior to avoid those sanctions. Further, either way, King's financial strength and fiscal planning are immediately and directly affected by this exposure to costs and/or liabilities.

12.    Plaintiff Douglas Hurst is a resident of Virginia, which has opted not to establish its own insurance Exchange. He is married, his projected household income for 2014 is $48,000, and he will be 62 years old on January 1, 2014. Hurst is not eligible for employer- or government-sponsored health coverage that satisfies the individual mandate. Absent the IRS Rule, Hurst would be entitled to a certificate of exemption from the individual mandate penalty for 2014, because the cheapest bronze plan approved for sale to him on the federal Exchange in Virginia costs more than 8% of his projected household income (*i.e.*, more than $320 per month). But because the IRS Rule makes him eligible for a subsidy that would reduce his out-of-pocket cost to below that figure, he will be disqualified from that otherwise-applicable exemption and

3

subject to the individual mandate penalty. As a result, Hurst will be forced to either pay a penalty or purchase more insurance than he wants. He is therefore injured by the IRS Rule, because it has the effect of either subjecting him to monetary sanctions or requiring him to alter his behavior to avoid those sanctions. Further, either way, Hurst's financial strength and fiscal planning are immediately and directly affected by this exposure to costs and/or liabilities.

13.     Plaintiff Brenda Levy is a resident of Virginia, which has opted not to establish its own insurance Exchange. She is single, her projected household income for 2014 is $43,000, and she will be 63 years old on January 1, 2014. Levy is not eligible for employer- or government-sponsored health coverage that satisfies the individual mandate. Absent the IRS Rule, Levy would be entitled to a certificate of exemption from the individual mandate penalty for 2014, because the cheapest bronze plan approved for sale to her on the federal Exchange in Virginia costs more than 8% of her projected household income (*i.e.*, more than $287 per month). But because the IRS Rule makes her eligible for a subsidy that would reduce her out-of-pocket cost to below that figure, she will be disqualified from that otherwise-applicable exemption and subject to the individual mandate penalty. As a result, Levy will be forced to either pay a penalty or purchase more insurance than she wants. She is therefore injured by the IRS Rule, because it has the effect of either subjecting her to monetary sanctions or requiring her to alter her behavior to avoid those sanctions. Further, either way, Levy's financial strength and fiscal planning are immediately and directly affected by this exposure to costs and/or liabilities.

14.     Plaintiff Rose Luck is a resident of Virginia, which has opted not to establish its own insurance Exchange. She is married, her projected household income for 2014 is $45,000, and she will be 55 years old on January 1, 2014. Luck is not eligible for employer- or government-sponsored health coverage that satisfies the individual mandate. Absent the IRS

4

Rule, Luck would be entitled to a certificate of exemption from the individual mandate penalty for 2014, because the cheapest bronze plan approved for sale to her on the federal Exchange in Virginia costs more than 8% of her projected household income (*i.e.*, more than $300 per month). But because the IRS Rule makes her eligible for a subsidy that would reduce her out-of-pocket cost to below that figure, she will be disqualified from that otherwise-applicable exemption and subject to the individual mandate penalty. As a result, Luck will be forced to either pay a penalty or purchase more insurance than she wants. She is therefore injured by the IRS Rule, because it has the effect of either subjecting her to monetary sanctions or requiring her to alter her behavior to avoid those sanctions. Further, either way, Luck's financial strength and fiscal planning are immediately and directly affected by this exposure to costs and/or liabilities.

15.     Defendant Kathleen Sebelius is the Secretary of the U.S. Department of Health and Human Services. She is sued in her official capacity.

16.     Defendant Jacob Lew is the Secretary of the U.S. Department of the Treasury. He is sued in his official capacity.

17.     Defendant Daniel Werfel is the Acting Commissioner of Internal Revenue. He is sued in his official capacity.

18.     Defendant U.S. Department of Health and Human Services ("HHS") is an executive agency of the United States within the meaning of the APA.

19.     Defendant U.S. Department of the Treasury is an executive agency of the United States within the meaning of the APA.

20.     Defendant Internal Revenue Service is an executive agency of the United States within the meaning of the APA.

21.     Under the IRS Rule, Plaintiffs must by January 1, 2014, either purchase insurance that they otherwise would not purchase or incur penalties. Their injuries are therefore impending.

## III.   STATUTORY AND REGULATORY BACKGROUND

### A.   The ACA Offers Subsidies Through State-Run Insurance Exchanges

22.     The ACA regulates the individual market for health insurance primarily through insurance Exchanges organized along state lines. HHS describes an Exchange as "a mechanism for organizing the health insurance marketplace to help consumers and small businesses shop for coverage in a way that permits easy comparison of available plan options based on price, benefits and services, and quality." *Initial Guidance to States on Exchanges*, http://www.healthcare.gov/ law/resources/regulations/guidance-to-states-on-exchanges.html (last visited Sept. 10, 2013). Participation in Exchanges also facilitates federal regulation of both insurers (who are subjected to numerous rules and requirements in order to sell their products on Exchanges) and individuals (who are required by the individual mandate to purchase comprehensive insurance policies).

23.     The Act provides that, by January 1, 2014, "[e]ach State shall . . . establish" an insurance exchange to "facilitate[] the purchase of qualified health plans." ACA § 1311(b)(1). But, under the Constitution's core federalism commands, the federal government cannot *compel* sovereign states to create Exchanges. The Act therefore also recognizes that some states may not be "electing State[s]," because they may not "elec[t] ... to apply" HHS regulations for the "establishment and operation of Exchanges"; or they might otherwise "fai[l] to establish [an] exchange," ACA § 1321(a)–(c). It provides that if a state is "not an electing State" or if the HHS Secretary determines, "on or before January 1, 2013," that an "electing State . . . will not have any required Exchange operational by January 1, 2014," then the Secretary "shall . . . establish and operate such Exchange within the State." *Id.* § 1321(c). The federal government is therefore responsible for establishing and operating Exchanges in states that decline to do so.

6

24.     The Act encourages states to establish Exchanges with a variety of incentives, chiefly the premium assistance subsidy for state residents purchasing individual health coverage through State-established Exchanges. *See* ACA § 1401. Targeted at low- and moderate-income individuals and families, the subsidy is available to households with incomes between 100 percent and 400 percent of the federal poverty line. *See* ACA § 1401(c)(1)(a). Under the 2013 federal poverty guidelines, a single person with income between $11,490 and $45,960, or a married couple with income between $15,510 and $62,040, would qualify for the subsidy. *See* Annual Update of the HHS Poverty Guidelines, 78 Fed. Reg. 5182 (Jan. 24, 2013).

25.     The payment of the subsidy is conditioned on the individual purchasing insurance through an Exchange established by a state. The Act provides that a tax credit "shall be allowed" in a particular "amount," 26 U.S.C. § 36B(a), with that amount based on the monthly premiums for a "qualified health pla[n] offered in the individual market within a State which cover the taxpayer, the taxpayer's spouse, or any dependent . . . of the taxpayer *and which were enrolled in through an Exchange established by the State under [§] 1311 of the Patient Protection and Affordable Care Act*," *id.* § 36B(b)(2)(A) (emphasis added). Therefore, there is no premium assistance subsidy under the Act unless the citizen pays for insurance obtained through a State-established Exchange. Confirming the point, the statute calculates the subsidy by looking to "coverage months," defined as months in which the taxpayer "is covered by a qualified health plan described in subsection (b)(2)(A) *that was enrolled in through an Exchange established by the State under section 1311 of the Patient Protection and Affordable Care Act*." 26 U.S.C. § 36B(c)(2)(A)(i) (emphasis added). Again, unless the citizen has enrolled in a plan through a state-created Exchange established under § 1311 of the ACA, he gets no subsidy.

7

### B.   Federal Subsidies Trigger the Individual Mandate Penalty

26.   The availability of the subsidy triggers the Act's individual mandate penalty for many otherwise-exempt individuals.  That mandate requires all "applicable" individuals to obtain "minimum essential coverage."  ACA § 1501(d); 26 U.S.C. § 5000A(a).  Failure to comply with that requirement triggers a penalty.  26 U.S.C. § 5000A(b).  But that penalty does not apply to those "who cannot afford coverage" or who would suffer "hardship" if forced to buy it. *Id.* § 5000A(e)(1), (5).   Under HHS regulations implementing these statutory provisions, an individual may obtain an advance exemption from the individual mandate penalty, called a "certificate of exemption," if the annual cost of health coverage exceeds eight percent of his projected household income for that year.   *See* 45 C.F.R. § 155.605(g)(2); *see also* 26 U.S.C. § 5000A(e)(1)(A).  That cost is calculated as the annual premium for the cheapest bronze insurance plan available in the Exchange in that person's state, minus "the credit allowable under section 36B [ACA § 1401(a)]."  26 U.S.C. § 5000A(e)(1)(B)(ii).

27.   In states that do not establish their own Exchanges, no tax credit is "allowable." *Id.*  Thus, by purporting to make the credit allowable in such states, the IRS Rule decreases the net cost of coverage for individuals in those states and thus increases the number of people in those states who are subject to the individual mandate's penalty.  Now ineligible for certificates of exemption, those individuals are no longer free to forgo coverage without being exposed to penalties, or to buy inexpensive, high-deductible, catastrophic coverage (which is otherwise restricted by the Act to individuals under age 30 (*see* ACA, § 1302(e)).

### C.   34 States Decline To Establish Their Own Exchanges

28.   Exercising the option granted by the Act (and required by the Constitution), 34 states have decided not to establish Exchanges. 27 states—including Virginia—have opted out of the Exchange regime completely, while another seven have opted only to assist the federal

government with its operation of federally-established Exchanges. *See* Patient Protection and Affordable Care Act; Establishment of Exchanges and Qualified Health Plans; Exchange Standards for Employers, 77 Fed. Reg. 18,310, 18,325 (Mar. 27, 2012) (categorizing such "partnership" Exchanges as federally-established).

### D. The IRS Promulgates a Regulation Ignoring the ACA's Limitations on Subsidies

29.    Under the text of the Act, premium assistance subsidies are not available in the 34 states with federally-established Exchanges. But the IRS has promulgated a rule requiring the Treasury to disburse subsidies in those states regardless. Specifically, the Rule states that subsidies shall be available to anyone "enrolled in one or more qualified health plans through an Exchange," and defines "Exchange" to mean "a State Exchange, regional Exchange, subsidiary Exchange, *and Federally-facilitated Exchange*." *See* Health Insurance Premium Tax Credit, 77 Fed. Reg. 30,377, 30,378, 30,387 (May 23, 2012) (emphasis added). (Regional and subsidiary Exchanges are, like ordinary state Exchanges, established by states under § 1311 of the Act.) The Rule adopts this definition even as the same regulation elsewhere admits that a "federally-facilitated Exchange" is "an Exchange established and operated ... by *the Secretary* under *section 1321(c)(1)* of the [ACA]," 45 C.F.R. § 155.20 (emphases added), not by the *State* under *section 1311* of the Act, as the ACA expressly requires in its subsidy provisions.

30.    The IRS justified its regulation with only the following short explanation:

> The statutory language of section 36B and other provisions of the Affordable Care Act support the interpretation that credits are available to taxpayers who obtain coverage through a State Exchange, regional Exchange, subsidiary Exchange, and the Federally-facilitated Exchange. Moreover, the relevant legislative history does not demonstrate that Congress intended to limit the premium tax credit to State Exchanges. Accordingly, the final regulations maintain the rule in the proposed regulations because it is consistent with the language, purpose, and structure of section 36B and the Affordable Care Act as a whole.

77 Fed. Reg. at 30,378.

31.     Under the IRS Rule, premium assistance subsidies are thus available in the 34 states that declined to establish their own Exchanges. In turn, those subsides expand the reach of the individual mandate penalty for individuals residing in those states.

## IV.   CLAIMS

### COUNT I:
### Rulemaking in Violation of the Administrative Procedure Act ("APA")

32.     Plaintiffs repeat and reallege each of the foregoing allegations in this Complaint.

33.     The APA forbids agency action "in excess of statutory jurisdiction, authority, or limitations." 5 U.S.C. § 706(2)(C). It further forbids agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* § 706(2)(A).

34.     The ACA unambiguously restricts premium assistance subsidies to state-established insurance Exchanges. The plain text of the statute makes subsidies available only to individuals who enroll in insurance plans "through an Exchange established by the State under [§] 1311 of the [Act]." 26 U.S.C. § 36B(b)(2)(A). But an exchange established by the federal government under the authority of § *1321* of the Act is not "an Exchange established by the State under [§] *1311* of the [Act]." The IRS's reading is contrary to the Act's plain language.

35.     Congress understood the distinction between Exchanges established by a state under § 1311 of the Act and Exchanges established under other authority in the Act, and consciously distinguished between the two. For example, ACA § 1312(d)(3)(D) provides that

> after the effective date of this subtitle, the only health plans that the Federal Government may make available to Members of Congress and congressional staff with respect to their service as a Member of Congress or congressional staff shall be health plans that are—(I) created under this Act (or an amendment made by this Act); or (II) offered through *an Exchange established under this Act* (or an amendment made by this Act). (Emphasis added.)

36.     By authorizing federal premium assistance subsidies to individuals who do not qualify under the statute, the IRS Rule exceeds the agency's statutory authority and is arbitrary, capricious, and contrary to law.

37.     Even assuming *arguendo* that the Act grants the IRS the discretion to authorize federal subsidies for individuals enrolled in plans from Exchanges not established by a state, the statutory interpretation offered by the IRS in support of the Rule is arbitrary, capricious, unsupported by a reasoned basis, and contrary to law.

38.     Plaintiffs have no adequate or available administrative remedy; in the alternative, any effort to obtain an administrative remedy would be futile.

39.     Plaintiffs have no adequate remedy at law.

40.     Defendants' action in promulgating the IRS Rule imposes a certainly impending harm on Plaintiffs that warrants relief.

## V.    REQUESTS FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully pray that this Court:

1.      Enter a declaratory judgment that the IRS Rule violates the APA;

2.      Enter a preliminary and permanent injunction prohibiting the application or enforcement of the IRS Rule; and

3.      Award all other relief as the Court may deem just and proper, including any costs or fees to which Plaintiffs may be entitled by law.


Dated: September 16, 2013
       Washington, District of Columbia

11

Respectfully submitted,

Michael A. Carvin (*application for admission pending*)
    macarvin@jonesday.com
Walter D. Kelley Jr. (VSB No. 21622)
    wdkelley@jonesday.com
Jacob M. Roth (*application for admission pending*)
    yroth@jonesday.com
Jonathan Berry (VSB No. 81864)
    jberry@jonesday.com

JONES DAY
51 Louisiana Avenue NW
Washington, DC 20001
Phone: (202) 879-3939
Fax: (202) 626-1700

*Attorneys for Plaintiffs*